### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

ECOLAB, INC.,                              )            CASE NO. 8:97CV304
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )            MEMORANDUM
                                           )            AND ORDER
PARACLIPSE, INC.,                          )
                                           )
                    Defendant.             )

The matter before the court is Defendant Paraclipse's request for additional claim construction of Plaintiff Ecolab's U.S. Patent No. 5,365,690 ("the '690 Patent") (Filing No. 368, Status Conference). Also before the court is Ecolab's Motion in Limine to Exclude, or Limit, the Testimony of Defendant's Experts. (Filing No. 376).

On November 22, 1994, Ecolab scientists were issued the '690 Patent, which Ecolab markets under the name Stealth® fly trap. The Stealth is designed to be mounted in the "front of the house" of a commercial setting (where patrons are), and to work in such a way that patrons will not know a fly trap is in use.

Paraclipse created and designed various fly traps under the name "Insect Inn." Ecolab filed this lawsuit in 1997 claiming that Paraclipse's Insect Inn IV fly trap infringes the '690 Patent.[1] This case was tried to a jury in 2000, and the jury determined that the Insect Inn IV did not infringe the '690 Patent. Ecolab appealed, arguing that it was entitled to a new trial because the district court erroneously instructed the jury on claim interpretation.

---

[1] Ecolab previously sued Paraclipse alleging that Paraclipse's Insect Inn II infringed the '690 Patent. The prior lawsuit was settled in 1996, and a Final Judgment was entered finding that the '690 Patent was a pioneering invention, and that the claims of the '690 invention were valid and infringed by the Insect Inn II. (Filing No. 383-13, Final Judgment).

Claim 16 of the '690 patent states:

> A flying insect trap using reflected and radiated light as an insect attractant, which trap comprises a vertical, planar surface, a housing containing a means to mount the housing on the vertical, planar surface, an insect immobilization surface and a source of insect attractant light wherein the housing is configured such that when mounted on the vertical, planar surface, the source cannot be directly viewed and the housing contains a surface at an angle to the horizontal, planar surface of less than 80° which reflects light from the source onto the vertical, planar surface, and the trap has an upwardly facing opening.

(Filing No. 381-3, '690 Patent).   Ecolab successfully challenged the portion of Jury Instruction No. 11 which stated: "[t]he term 'reflected light'  . . .  means the light from the source which bounces off, i.e., is reflected off, a reflecting surface on the inside wall of the housing cover":

> "Direct light," as described in the patents, means light radiated directly from the source of the light onto the wall above the unit. The term "reflected light," as used in the patent claims, means the light from the source which bounces off, i.e. is reflected off, a reflecting surface on the inside wall of the housing cover.

*Ecolab*, *Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1372 (Fed. Cir. 2002).  Ecolab argued that this instruction improperly limited the scope of Claim 16 to include only reflecting surfaces that are "located on the inside wall of the housing cover."  *Id.*  The Federal Circuit noted, "this issue was not addressed or decided at the pre-trial *Markman* hearing."  *Id.*   The Federal Circuit concluded that the district court "incorrectly interpreted the claims, in part, and gave an erroneous jury instruction as to claim 16."  *Id.* at 1378. Specifically,

> The jury instruction is erroneous as to claim 16. Claim 16 requires only that the "housing *contain[ ]* a surface ... which reflects light." '690 patent, col. 10, ll. 16-18 (emphasis added). The ordinary meaning of "contain" is "to have within." *Webster's Third New Int'l Dict.,* 490-491 (1966). Thus, claim 16 does not require the reflecting surface to be located "on the inside wall of the housing cover.

*Id.* at 1374.   The case was remanded for a new trial on Claim 16 of the '690 Patent.

Paraclipse cross-appealed the district court's exclusion of all arguments related to the '690 Patent invalidity and unenforceablility.   The Federal Circuit held that, in the new trial, Paraclipse is entitled to challenge the validity of the '690 patent.  *Id.* at 1378.

After the Federal Circuit opinion was issued, Paraclipse challenged the validity of the '690 patent by filing a request for reexamination with the United States Patent and Trademark Office ("PTO").   This matter was stayed pending a determination of patentability.   On November 21, 2007, the Board of Patent Appeals and Interferences ("BPAI") issued its final opinion on the patentability of the reexamined claims. A divided panel found that Claim 16 was patentable.[2]   Ecolab objected to the BPAI's adoption of a new claim construction for the term "the source cannot be directly viewed" that was not advocated by either Ecolab or the reexamination examiner.  (Filing No 383-35, Ecolab's Comments on Statement of Reasons for Allowance, filed Dec. 21, 2007.)

On March 20, 2008, the Magistrate Judge conducted a status conference regarding the progress of the PTO reexamination.   During the status conference, Paraclipse requested an additional claims construction hearing as to the term "the [light] source cannot be directly viewed."   Ecolab argued that Paraclipse had waived the claim construction of "the [light] source cannot be directly viewed" by not raising the issue at the first claim construction hearing in 1998.  Paraclipse contended that the Federal Circuit opinion reinstating its claim of invalidity reopened claim construction.

---

[2] *Ex parte Thomas D. Nelson & Douglas G. Anderson,* 2007 WL 4162768, Appeal 2007-2914, Reexamination Control No. 90/006,659; Patent No. 5,365,690 (Nov. 21, 2007) (Filing No. 383-30). The 2007 decision was the second reexamination of the patent.

3

On April 9, 2008, the stay was lifted and this matter was returned to this court's docket.  The parties were granted leave to brief whether any additional claim construction was warranted and the substantive construction requested.  On June 9, 2008, this court conducted a Claim Construction (*Markman*) hearing to assist the court in interpreting the meaning of the claim term in dispute.  First, however, this court must determine whether such claim construction is warranted, or whether Paraclipse waived additional claim construction by not requesting that the claim term "the source cannot be directly viewed" be construed at the first *Markman* hearing.

## WAIVER OF CLAIM CONSTRUCTION

On November 16 and 17, 1998, the district court conducted a *Markman* hearing in this matter at which five witnesses testified, including the inventors of the '690 patent Douglas Anderson and Thomas Nelson.  (Filing Nos. 93-94, *Markman* Hearing Transcripts Volume I and II.)  Prior to the hearing, both sides submitted extensive briefs and proposed findings of fact.  In February 1999, both parties submitted "Post *Markman* Hearing Briefs."[3] The briefing clearly indicates that the parties requested interpretation of claim 16, but only the terms "insect attractant light" and "a surface . . . which reflects light."

In August 1999, the district court issued its opinion regarding the claim construction and trial was scheduled for March 3, 2000.  On January 10, 2000, the district court entered an order barring Paraclipse from contesting the validity of the patent based on a settlement agreement between the parties in a prior case.  At no time before March 2008 did

---

[3] Both sets of briefs were submitted to the chambers of Judge Thomas Shanahan, the U.S. District Court Judge assigned to this matter, pursuant to the court's filing rules in place at the time.  This court effected the entry of the briefs on the CM/ECF filing system in conjunction with the June 9, 2008 hearing.

4

Paraclipse request that the court construe Claim 16's term: "the source cannot be directly viewed."

Paraclipse argues that it did not request claim construction of claim term "the source cannot be directly viewed" because it believed that the plain language of the patent would apply, and because the issue was not raised by Ecolab until the 2007 reexamination. Paraclipse also argues that the Federal Circuit reversal allowing Paraclipse to challenge the patent's validity re-opens the issue of claim construction. [4]

It is recognized that courts have held multiple *Markman* hearings and allowed the parties to request additional claim construction after construing claims. *See, Timeline, Inc. v. Proclarity Corp.*, 2007 WL 1103092 (W.D. Wash 2007) (additional *Markman* hearings before trial at the parties' request); *Joao v. Sleepy Hollow Bank*, 418 F. Supp. 2d 578 (S.D.N.Y. 2006) (parties requested second *Markman* hearing prior to trial); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293 (Fed. Cir. 2006) (the Federal Circuit instructed the district court to construe a claim limitation). However, as these cases illustrate, additional claim construction is granted on limited basis, such as when the request comes prior to trial or when the district court receives specific instructions to construe a claim on remand from the Federal Circuit. Neither is the case here. More persuasive is *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004). In *Eli Lilly*, the defendant did not request that the court construe an additional claim, and never

---

[4] Paraclipse argues that Ecolab is precluded from asserting that Paraclipse waived further claim construction because Ecolab did not object to the Magistrate Judge's Order setting this *Markman* hearing. The Magistrate Judge's Order did not specifically rule as to whether Paraclipse waived its right to additional claim construction, and this court indicated at the start of the *Markman* hearing that it would consider the necessity of additional claim construction as part of the *Markman* hearing.

offered a construction of the claim, until after the presentation of all the evidence to the jury. The Federal Circuit held that the defendant waived its right to request a construction of the additional claim and that, by failing to raise a claim construction issue at a *Markman* hearing, the defendant implicitly conceded that the meanings of the terms in the claim were clear and not in need of construction. *Eli Lilly and Co.*, 376 F.3d at 1360. *See also United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding that claim construction is required only "when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution to determine" the issue before the court). Similarly, additional claim construction can be waived on remand because the defendant did not request the construction in prior pleadings, particularly when the new theory was advanced in anticipation of the court granting summary judgment on validity claims already raised. *Liebel-Flarsheim Co. v. Medrad Inc.*, 2005 WL 2840744 (S.D. Ohio 2005).

Courts strive to prevent piecemeal litigation and to promote efficient administration of justice. In this case, Paraclipse has repeatedly requested reexaminations of the '690 Patent by the patent office, which has found it to be valid. Now, more than eight years after extensive briefing and a two-day *Markman* hearing, Paraclipse seeks to place at issue additional claim construction. The court is not willing to do so. It is clear from the record that at the time of the first *Markman* hearing that the validity of the '690 Patent was contested. Paraclipse could have requested claim construction of the term "the source cannot be directly viewed" at that time. The Court determines that Paraclipse has waived claim construction of that term.

6

## CLAIM CONSTRUCTION

Even if this Court did not deem the additional construction waived, it would adopt Ecolab's proposed claim construction of Claim 16 (col. 10, line 15-16): "the source cannot be directly viewed" to mean "***when mounted at or above eye level,*** the light source cannot be directly viewed."

### *Standard of Review for Claim Construction*

Claim construction is an issue of law. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly. *Exxon Chem. Patents, Inc. v. Lubrizoil Corp.*, 64 F.3d 1553, 1555 (Fed. Cir.1995). Claim construction is a way of elaborating normally terse claim language in order understand and explain, but not change, the scope of the claims. *Terlep v. Brinkmann Corp.,* 418 F.3d 1379, 1382 (Fed. Cir. 2005). Claim construction is a matter of resolution of disputed meanings and technical scope to clarify, and when necessary to explain, what the patentee covered by the claims, for use in the determination of infringement. *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997).

"[T]he claims of the patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "Because the patentee is required to 'define precisely what his invention is,' it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1312. When construing claims, the words of a claim are generally given their ordinary and customary meaning, which is "the meaning

that the term would have to a person of ordinary skill in the art in question at the time of the invention." *NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1293 (Fed. Cir. 2005). To ascertain the meaning of a claim term, "the court looks to those sources available to the public that show what a person of ordinary skill in the art would have understood disputed claim language to mean." *Id.* A "person of ordinary skill in the art is deemed to read the claim term not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

"The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification is always highly relevant, has been described as "the single best guide to the meaning of a disputed term," and is typically dispositive. *See id.* "The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). However, the court must be cautious not to import limitations from the specification in determining the meaning of terms used in the claims. *Comark Comms. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir.1998).

Interpreting the asserted claims entails a review of the intrinsic evidence, which consists of the claim language, the written description, and the prosecution history. *Terlep v. Brinkmann Corp.,* 418 F.3d 1379, 1382 (Fed. Cir. 2005). The primary focus of the Court should be on intrinsic evidence. *Phillips*, 415 F.3d at 1312 -14. A district court may rely

on extrinsic evidence, however, it cannot be used to alter a claim construction dictated by a proper analysis of the intrinsic evidence. *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1139 (Fed. Cir. 2004); *see Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained"). Extrinsic evidence is very broad, and basically includes all evidence but intrinsic evidence. Common forms of extrinsic evidence include dictionaries, reference books on the topic of the art, and expert testimony. Dictionaries may be helpful but are "less significant than the intrinsic record in determining the legally operative meaning of claim language." *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007).

Because an inventor normally uses claim terms consistently throughout a patent, the usage of a term in one claim may reveal the meaning of the same term in other claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Conversely, use of a term in a different way in another claim may also be useful in determining the particular meaning of the disputed term. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). Particularly, the existence of a dependent claim that adds a particular limitation creates a presumption that the limitation in question is not present in the independent claim. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). With this legal framework in mind, this court turns to the claim construction of the term "the [light] source cannot be directly viewed."

### *The Claim Term: "the light source cannot be directly viewed"*

Ecolab contends that "the [light] source cannot be directly viewed" means "when mounted at or above eye level, the light source cannot be directly viewed." Paraclipse has proposed the following claim construction:

> "the structure of the housing is configured to obstruct any and all direct viewing of the light source by all potential occupants at the installation locus from all locations outside of the trap when the trap is mounted on the vertical, planar surface, regardless of the mounting height of the trap and the viewing angle, height, and position of the occupants"

This court begins by looking at the context of the term within the claim, "wherein the housing is configured such that when mounted on the vertical, planar surface, the source cannot be directly viewed." Because the trap "has an upwardly facing opening" and emits "radiated light," the only way it can be mounted such that the light source cannot be directly viewed is for it to be mounted at or above eye level. (Filing No. 381-3, '690 Patent, col. 10, ll. 19-20).

Further, the specification supports Ecolab's construction as it teaches that "when placed into the environment, the traps are typically wall mounted or placed within 30-50 inches of the vertical surface or the ceiling surface or less," and "[p]referably, the insect trap of the invention is installed in a location with a high concentration of insects at or above eye level. . ." (Filing No. 381-3, '690 Patent, col 4, ll. 33-35 and col 5, ll 62-63). While Paraclipse points to the specification which states that "when the trap of the invention is mounted on a vertical surface such as a wall, it can be mounted at virtually any height" (Filing No. 381-3, col. 5, ll. 58-60), the fact that the device can be mounted at "virtually any height" does not negate a requirement that it be mounted at or above eye level to prevent patrons from viewing the light source.

10

Figures 1 and 2 of the specification also support Ecolab's construction, in that the figure has an "upwardly facing opening defined by the top [numeral] **13** of the walls [numeral] **19** of the housing." ('690 Patent, col. 8, ll. 14-15).



"The housing encloses the light source or sources but provides a substantial upwardly facing opening for the walking or flying entry of flying insect pests." ('690 Patent, col. 2, ll 62-65; and col. 2, ll. 9-15 & 24-25, col. 8, ll. 40-43). "Correct placement increases insect capture through direct radiation of light and reflection of light onto either a vertical or horizontal surface (ceiling)." col. 4, ll. 21-24.

Paraclipse also argues that claim 7 includes the term "when the housing is installed above eye level" and therefore, the limitation cannot be read into claim 16. "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *AllVoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236, 1247 (Fed. Cir. 2007), *citing Phillips*, 415 F.3d at 1314. Specifically, claim 7 provides in relevant part "a one piece housing surrounds the light source such that the source of insect attractant light cannot be readily viewed when the housing is installed above eye level."

11

(Exhibit 381-3, '690 Patent, col. 9, ll. 15-18.  The court rejects the contention that the limitations of claim 7 are barred from being read into claim 16.  Instead, it is helpful in determining the limitations of claim 16 to see that under claim 7 the term "light source cannot be viewed" was intended to apply to the housing mounted above eye level - and not at every level.

Ecolab argues that Paraclipse's construction would exclude every disclosed embodiment.  A claim construction that excludes embodiments of the claimed invention disclosed in the specifications is "rarely, if ever, correct."  *Vitronics*, 90 F.3d at 1583-84. Paraclipse counters that the specification provides for a different embodiment, one where "[t]he housing can entirely enclose the illumination source or can enclose the illumination source on three sides using the vertical surface to complete the enclosure."  ('690 Patent col 4, ll. 62-64).  *See Intamin Ltd. v. Magnetar Technologies, Corp.*, 483 F.3d 1328, 1336-37 (Fed. Cir. 2007) ("[A] claim need not cover all embodiments…. A patentee may draft different claims to cover different embodiments.");  *Sinorgchem Co., Shandong v. International Trade Com'n,* 511 F.3d 1132, 1138 (Fed. Cir. 2007) ("Where, as here, multiple embodiments are disclosed, we have previously interpreted claims to exclude embodiments where those embodiments are inconsistent with unambiguous language in the patent's specification or prosecution history.").  Paraclipse argues that reading the preferred embodiment into claim 16  is contrary to case law which requires that courts not limit claims to the embodiments disclosed in the specification.  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1328 (Fed. Cir. 2003).  Paraclipse contends that the Federal Circuit Court has cautioned against limiting the claimed invention to the preferred

embodiments or specific examples in the specification. *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1563 (Fed. Cir. 1998). Paraclipse's reading would exclude all the embodiments of the '690 Patent, and while "at or above eye level" is part of the preferred embodiment, the court finds that the preferred embodiment is consistent with the patent's specification and prosecution history.

Finally, Paraclipse argues under the "ordinary meaning" of the term, the court should look to the dictionary for a definition of "cannot" and spends much effort to explain the term. The Court looks not only to the one word, but also the context. In doing so, and giving the terms the definition given by a person of ordinary skill in the art in the context of the patent, it is important to note that there is a functional aspect to "when mounted" - in other words the trap is to be mounted such that patrons cannot directly view the light source. In order to do so, the trap must be mounted at or above eye level as stated in the specifications. A person of ordinary skill in the art, when reading the claims, specifications, and patent prosecution, would find that the term "the light source cannot be directly viewed" means "when mounted at or above eye level, the light source cannot be directly viewed."

### *Federal Circuit and Other District Court Support for this Court's Claim Construction*

The Federal Circuit did not construe the term "the [light] source cannot be directly viewed" in its opinion, as there was no request from the parties for construction of the term prior to March 2008. It is implied in the Federal Circuit's opinion, however, that the term "[light] source cannot be directly viewed" is to be read to include "when the trap is mounted at or above eye level."

13

The Federal Circuit discussed the language of claim 8, the same language used in claim 16, stating that "Figure 1 shows a housing having side walls, a bottom wall, and an upwardly facing opening for insect entry. '690 patent, col. 8, ll 5-19. A light source is positioned within the housing such that the light source cannot be directly viewed when the trap is mounted at or above eye level. *Id.* col. 8, ll 21-28." *Ecolab*, 285 F.3d at 1366. While the statement is in part dicta, it is clear that the Federal Circuit believed that the terms of the patent "the light source cannot be directly viewed" meant "the light source cannot be directly viewed when the trap is mounted at or above eye level."

The September 2000 ruling by Judge Michael Davis of the U.S. District Court for the District of Minnesota is also persuasive. In a case brought by Ecolab against Gardner Manufacturing (a different competitor) the Minnesota court construed the language "the source cannot be directly viewed." Judge Davis looked at the specification which indicates that the trap is preferably mounted at or above eye level. '690 patent, col. 5 at ll 62-66. He found that "[t]he ordinary meaning of the claim language, when read in light of the specification provides that claims 8 and 16 require that when mounted at or above eye level, the light source cannot be directly viewed." *Ecolab, Inc. v. Gardner Manufacturing Co. Inc. and Guardian Pest Control, Inc.,* Case No. 98-2294 (D. Minn. 2000) p. 16.

### ***Ecolab's Interpretation Does Not Render the '690 Patent Invalid.***

Paraclipse contends that if the Court adopts Ecolab's interpretation, the '690 Patent is then rendered invalid, and claims should be construed to preserve their validity. *See Philips*, 415 F.3d at 1327.

#### BPAI's Decision

The BPAI determined, and Paraclipse urges this Court to adopt, that "it would be unreasonable to construe the claims as to allow direct viewing of the light source from

some direction, notwithstanding that the specification discloses an embodiment in which the light source can be directly viewed from the top. . . . When a claim has a requirement, i.e., light source cannot be directly viewed, no law requires re-writing of the claim by interpretation to ignore that requirement just to allow a reading of the claim on a disclosed embodiment."  (Filing No. 381-4, BPAI Decision on Appeal, p. 9-10).

Comments made by examiners or administrative law judges during the course of prosecution or reexamination of a patent are inapposite to claim construction in a patent litigation proceeding because the rules of claim construction that apply to patent litigation proceedings are different from those that apply during prosecution or reexamination proceedings.  *Atl. Thermoplastics Co., Inc. v. Faytex Corp.*, 970 F.2d 834, 846 (Fed. Cir. 1992); *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989) (holding that the Patent Office erred when it "applied the mode of claim interpretation that is used by courts in litigation . . . ."). The Patent Office's claim construction standards simply are inapplicable to litigation.  *Atl. Thermoplastics Co., Inc.*, 970 F.2d at 846.

The Claim Construction Does Not Render the Claim Anticipated or Indefinite as a Matter of Law.

Paraclipse argues that if Ecolab's construction of the claim is adopted, the '690 Patent is rendered invalid as anticipated by a prior patent,[5] or the '690 Patent is indefinite as a matter of law.

_____

[5]  The prior patent at issue, U.S. Patent 4,876,822, the "White Patent," was demonstrated to be an insect-trapping light fixture, open at both the top and bottom so its light source can readily be viewed if the fixture is mounted above eye level.

15

A patent is anticipated under 35 U.S.C. § 102 if a single prior art reference explicitly discloses each and every limitation of the claimed invention. *See Lewmar Marine, Inc. v. Barient. Inc.,* 827 F.2d 744, 747 (Fed. Cir. 1987). The Federal Circuit has stated that "[t]here must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). A prior art reference also may anticipate without explicitly disclosing a feature of the claimed invention if that missing characteristic is inherently present in the single anticipating reference. *See Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

An anticipation inquiry involves two steps. First, the court must construe the claims of the patent in suit as a matter of law. *See Key Phar. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir.1998). Second, the finder of fact must compare the construed claims against the prior art. *See id.* A finding of anticipation will invalidate the patent. *See Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1378 (Fed. Cir. 1998). Issued patents are presumed valid, and the "underlying determination of invalidity ... must be predicated on facts established by clear and convincing evidence." *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) (citations omitted).

The definiteness requirement is set forth at 35 U.S.C. § 112 ¶ 2: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The test for definiteness asks whether one skilled in the art would understand the bounds of the claim when read in light of the specification. *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993).

16

A claim will be rejected for indefiniteness where it "is not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of protection involved." *Ex parte Lyell*, 17 U.S.P.Q.2d 1548, 1550-51 (Bd. Pat.App. & Int. 1990). A specification invites a determination of indefiniteness when it "leaves those skilled in the art entirely without guidance" as to the scope of requirement, *Exxon Research and Eng'g Co. v. United States*, 265 F.3d 1371, 1379 (Fed. Cir. 2001), adrift without the "objective anchor" which makes a term definite, *Datamize, LLC v. Plumtree Software, Inc*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

Based on this court's claim construction analysis, it cannot be said that as matter of law that Claim 16 is anticipated by a prior patent or rendered indefinite.

## MOTION IN LIMINE

The Motion in Limine seeks to exclude two of Paraclipse's experts.  Both testified at the first trial.  When the case was remanded, these experts provided supplemental expert reports on issues that were part of the remand.  It appears that Ecolab seeks to exclude their testimony on the supplemental opinions only.

Dr. John A. Woollam is a professor of Electrical Engineering and Physics at the University of Nebraska at Lincoln.  His area of expertise in this case is optics and the reflectance of light from various surfaces in the Paraclipse "Insect Inn IV."  He testified at the first trial in this matter and on remand he provided a  supplemental and a rebuttal report in which he opines that the reflective light in the Insect Inn IV is not sufficient to attract flies. Ecolab argues that this opinion must come from an expert on fly behavior, not an optics

17

expert.  Paraclipse counters that Woollam can use the fly attraction rates provided by other experts to conclude whether the light he measured meets those requirements.

John L. Alex is Paraclipse's proposed patent law expert.  He also testified at the first trial and has provided supplemental and rebuttal reports.  On remand, Ecolab alleges that Alex imports his own meaning to the findings of Ecolab's scientific expert and that he is not qualified to do so.

### *Rule 26 Disclosures*

Ecolab argues that compliance with the requirements of Rule 26 is mandatory. Ordinarily, failure to comply with the requirements of Rule 26 will result in exclusion of any information not properly disclosed. See Fed. R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rules 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."); *Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1008 (8th Cir. 1998).  Rule 26(a)(2) requires a party seeking to propound expert testimony to serve opposing parties with a detailed expert report, in writing, "prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2). This court has paraphrased the requirements of Rule 26(a)(2) as follows:

The report must contain the following specified sections:

(1) a complete statement of all opinions to be expressed; (2) the basis and the reasons for the opinions expressed; (3) the data or other information considered by the expert in forming the opinions; (4) any exhibits to be used as a summary of or support for the opinions; (5) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (6) the compensation to be paid for the study and testimony; and (7) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed. R. Civ. P. 26(a)(2)(B).

18

*Omaha Pub. Power Dist. v. Siemens Aktiengesellschaft*, No. 8:99CV352, 2002 U.S. Dist. LEXIS 6087, at *5-6 (D. Neb. Jan. 15, 2002). Rule 26(e) requires a party to supplement each disclosure made under 26(a) at appropriate intervals or as ordered by the court. The duty under Rule 26(e) extends to each category of information required under Rule 26(a)(2)(B), and new information provided in supplementation must be provided in as complete and detailed a manner as the initial disclosure. Fed. R. Civ. P. 26(e).

Paraclipse argues that the supplemental reports must be read with the original reports and that any defect in the reports was cured during protracted depositions of the experts. The court agrees with Paraclipse. Not only did Paraclipse provide supplemental and rebuttal expert reports, both experts were made available for additional deposition testimony. Therefore, the court denies the motion in limine with regard to the alleged failure to comply with Federal Rule of Civil Procedure 26.

### *Federal Rule of Evidence 702*

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

### Dr. Woollam's Testimony

Woollam is qualified as an expert in the field of optics, however, his report and background provide no evidence of expertise in fly behavior. Therefore, the court grants the motion in limine in part. To the extent that Woollam will provide expert testimony on fly behavior, that testimony is prohibited.

19

Patent Law Expert Testimony

In civil cases, Fed. R. Evid. 704 expressly permits expert opinion testimony that "embraces an ultimate issue to be decided by the trier of fact." However, "Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions." *United States v. Scop*, 846 F.2d 135, 139 (2d Cir.1988); see also 4 Weinstein's Federal Evidence § 704.04 ("In general, testimony about a legal conclusion, or the legal implications of evidence is inadmissible under Rule 704."). *Salas by Salas v. Wang,* 846 F.2d 897, 905 n. 5 (3d Cir.1988) (The Rules of Evidence do not permit expert testimony as to legal conclusions).

It is this court's understanding that the parties wish to show the jury a Federal Judicial Center video about patent law, and PTO policies and procedures, and the court intends to allow the showing of the video. The court is not persuaded that additional information about patent law in the form of expert testimony is required in this case. Both parties will be permitted to call their patent law experts, but the experts will not be permitted to testify as to any conclusions of law, nor will they be permitted to instruct the jury on the law applicable to the jury's deliberations.

IT IS ORDERED:

1.     The Court construes the term in Claim 16 of the '690 Patent: "the [light] source cannot be directly viewed" to mean "when mounted at or above eye level, the light source cannot be directly viewed," and

2.     Ecolab, Inc.'s Motion in Limine (Filing No. 376) is granted in part and denied in part as follows:

20

(a). Paraclipse expert Dr. John A. Woollam will be permitted to testify in his area of expertise, *i.e.*, optics, but will not be permitted to testify as to fly behavior, and

(b). Paraclipse expert John L. Alex will be permitted to testify, but not as to any conclusions of law nor in the form of instructions on the law.

DATED this 8th day of August, 2008.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge